We will move to Case No. 22-10445, Ruiz v. U.S. Attorney General. Ms. Trujillo, you have reserved six minutes for rebuttal. Is that correct? That's correct, Your Honor. You may begin. Yes. Annabella Trujillo on behalf of Ms. Melinda Ruiz, who is present in the courtroom. First, Your Honors, I would like to distinguish the present case from our case, from that of Patel. In Patel, the U.S. Supreme Court was deciding whether Patel falsely represented himself to be a U.S. citizen. This calls for the review of a question of fact. In the present case, the issue is whether the immigration judge applied the law correctly when he found that the abuse did not encompass acts of violence or a pattern of violence without considering whether the stated abuse encompassed extreme cruelty. The court in Patel finds that federal law prohibits judicial review of any judgment regarding the granting of relief under Section 1255, but also made an exception where the judgment concerns constitutional claims of questions of law. Can I ask you a quick question? Yes. I think, anyway, speaking for myself, I tend to agree with you that we would have jurisdiction over this sort of pure question of law of interpretation of this phrase, battery or extreme cruelty. The first difficult question, I think, for me in this case is how to understand what the IJ said and what the BIA said with respect to that interpretive question. The IJ's order, as I read it, does seem to rely very heavily on seemingly a requirement of there being physical violence. The BIA's decision is tougher to make sense of. The BIA, on the one hand, expressly adopts what the IJ said and, from my perspective, adopts that error, if you will. It also goes on to say stuff about abandonment and this kind of abandonment is not what we typically require. If it's just that, then that sounds like the sort of factual issue under Patel that we wouldn't have jurisdiction over. Can we be sure, when we have these mixed messages from the IJ and BIA decisions together, that the BIA, whose decision it really is that we're reviewing, sort of made the error that you're claiming it made? Does that make sense? Yes, Your Honor. It does. It makes perfect sense. Yes, when we look at the BIA does attempt to reconcile the fact that the IJ did not properly consider the law, but the fact is that the BIA expressly adopts the decision from the IJ and the BIA's analysis is only trying to fix what the immigration judge did without actually analyzing completely the facts of the case. In essence, the BIA did not go point by point. They were just trying to put a band-aid on what was incorrectly done at the lower level. They were trying to do both, but in fact, they were really just affirming the IJ. That's why, at this point, the BIA should have sent the case back to the immigration judge so the immigration judge could probably conduct its analysis. Your contention is that just as a matter of sort of procedural history and posture, together the IJ's and BIA's decisions, in effect, require a showing of physical violence, which you say is a misinterpretation of the statute. That's correct, Your Honor. That's correct. As to the questions posed by the court, we would say that Chevron deference does not apply and we should use a Skidmore deference because had the immigration judge applied the standard correctly, then Skidmore deference should apply because Skidmore allows us to see whether the judge applied the law and whether he applied the law correctly. What we need to make sure, coming from this case, is that judges apply the law and once they apply the law, their decision cannot be reviewed by this court. We would still ask this court to take into consideration that it should always make sure that the courts apply the correct law. What do you make of . . . In Conchia and Barton, we say these one-judge, unpublished BIA decisions are suspect and are not due ordinary Chevron deference unless the decision is applying pre-existing precedent. At least we do in the BIA's decision in this case have this one citation of this matter of AM case. Does that, do you think, qualify the BIA decision for ordinary deference? Well, Your Honor, in this case, I'm not sure, Your Honor. Basically, I believe that we should not give the IJ's decision deference where it's clear that he's not properly applying the law. So, the courts have gone and reviewed cases from the lower courts and gone through analysis where we've been able to see whether they applied the law correctly or not and not so much to the decision itself. What about the BIA's decision, though? I'm sorry? What about the BIA's decision? The BIA's decision in this case? Yes. Well, yes. The BIA's decision in this case, my only problem with the BIA's decision is that though it does go to try to put a band-aid on the issue, it doesn't really go and analyze all the facts as should have been done by the lower courts. So, if the BIA was going to do the job of the immigration judge, then it should have done it completely where it didn't. It pretty much glossed over the facts and tried to do a short analysis. So, I don't think that we should consider that what the BIA did was a substitute for what the IJ should have done in his analysis. Do you think that the IJ concluded, made any factual determinations that were wrong, though, or that the IJ applied the wrong standard and not, in your view, allowing non-physical cruelty to suffice? Right. So, I believe that when the IJ stated the facts in his decision, he did properly state them, but I do not believe that he applied them at the end when he was making his analysis as to whether there was extreme and unusual cruelty. But if that's true, do we really have any reason to say that the BIA should have also separately analyzed the facts if there's no disagreement about the facts? Right. There is no disagreement about the facts, but I believe that the BIA did not completely address all of the facts when it made its decision. I thought what you were saying, so I guess I took what you were saying to be something different. I thought you were saying that the IJ, no dispute about the facts, but the IJ clearly made an error of law in suggesting, as Judge Grant has said, that non-physical abuse is simply like per se insufficient, and that the problem with the BIA's decision, the Band-Aid that you describe, is that it sort of tried to patch up, or maybe it tried to patch up that sort of statutory error by saying, by referring to abandonment and the like, but it never sort of like fully was able to do so because it had adopted the IJ's decision. Right. It's not so much that it didn't like reanalyze the facts, it's that the legal error persists. Right, correct, Your Honor. So yes, the BIA did go, the problem is that it didn't completely analyze all the facts when it made its decision. It just tried to say that in a like summary way that the BIA did not, I'm sorry, that the IJ did not find extreme and unusual cruelty, and it stated that the BIA did go through the facts, but it didn't actually itself go through the facts. That's where we're at. So in this case, we would argue that the BIA is not able to come later and do the job of the IJ if it's not going to completely analyze the facts and do so in a way where it would apply the correct standard.  Ms. Vopouris. Good morning, Your Honors. May it please the Court. Rachel Berman Vopouris with the United States Attorney General. The Court should dismiss the petition for review. The petitioner's challenge to the agency's decision denying her application for special role cancellation of removal is foreclosed by the Supreme Court's decision in Patel, which said... You don't think there's any pure question of law here that we have jurisdiction over? That is correct, Your Honor. So I took, in your brief at page 13, you say the following. You say, the only legal issue that Ms. Ruiz raises is her argument that the agency applied the wrong standard by only considering physical harm and not considering psychological harm. That sounds to me like you've acknowledged that there is a legal, like there is an interpretive issue in the case. That was an acknowledgment that if that issue was colorable, if that issue existed in the case, then that would be a legal issue. Well, I mean, it seems to me like you say, she's put it at issue, right? You say, I acknowledge that there is this, the only legal issue that Ms. Ruiz raises, I mean, so you can't say that we don't have jurisdiction over that issue because it's no good, but, you know, because it's a loser, right? I mean, she's put a legal issue before us, and under Patel, don't we have jurisdiction over that? If this court finds it's a colorable legal question, then yes, Your Honor, but just saying that there is a legal question isn't enough for this court to have jurisdiction. This court would need to conclude that, yes, there is a legal question in this petition for example. I mean, but she says the statute means X. You say the statute means Y. Isn't that a legal question over which we have jurisdiction? I would then point to this court's decision in Bedoya-Melendez, where this court determined that there was no standard for the court to apply, no law for the court to apply in reviewing an agency decision that a petitioner did not show that she, in that case he, established that he was battered or subjected to extreme cruelty. So for there to be a standard for the court to apply a legal question that the agency applied the wrong standard, there would need to be a fixed standard for the agency to apply. And this court has held in Bedoya-Melendez that there is no such standard. But I think that could go too far, right? Because what if there was a case where someone's, you know, let's make it just horrific, their arms were ripped off. And the IJ and the BIA agreed that that's not really violence because it was an amputation. And right, could we really not, could we really say, well, there's no standard, so I guess that's fine? Would that not be an issue of the legal interpretation of what violence means? If this court found that there was an objective standard, a standard where they could apply that, yes, this constitutes battery, then yes, the court could reach that. But that would cut against this court's decision in Bedoya-Melendez, which said that both the battered and the subjected to extreme cruelty elements of this statute do not have an objective legal standard. And in fact, it's up to the attorney general or his delegates to make a judgment call about whether an applicant has met those requirements. Bedoya-Melendez wasn't answering any sort of like Chevron step one question or anything, was it? I mean, it's a different posture. It is correct, Your Honor. It did not delve into deference at all. Instead, it held as a matter of jurisprudence, since there was no law for the court to apply in reviewing this standard, that the court lacked jurisdiction or could not review this determination. So let me ask you this. What's your answer to the questions that we put to you for oral argument? Do you think this single member unpublished BIA decision is entitled to Chevron deference? No, Your Honor. As you discussed previously, in order for a single board member decision to get Chevron deference, that decision either needs to rely on a presidential board decision or a presidential board decision is subsequently issued. And so you acknowledge that the citation to Matter of AM in the BIA's decision is not reliance, as we described in Barton and Conchia, not good enough. So we're out of Chevron. Correct. Correct, Your Honor. We're into Skidmore. Correct, Your Honor. Because while Matter of AM supports the board's decision, it does not control or dictate the discretion necessary for this case to merit Chevron deference. So now you are left to argue equipped only with Skidmore deference that the BIA's interpretation of the phrase extreme cruelty to require physical violence is correct. I would disagree with your characterization of the board's decision there, Your Honor. Nowhere did the board or the immigration judge interpret the statute such that only physical violence is necessary to, for an applicant to show that she was subjected to extreme cruelty. Well, the immigration judge, I mean, let's be honest, the immigration judge's opinion, I think is pretty clear about that, is, you know, there's a lot of emphasis on physical violence. The immigration judge says, you know, several times, you know, she says thus and such, but I've seen that she's put forward no evidence of physical violence and therefore she loses. Now the BIA's decision, I'll acknowledge, is trickier. It adopts wholesale the IJ's decision and then it kind of goes on to say some other things. Frankly, it's hard to make heads or tails of what the BIA's decision here is and maybe this is one reason that we don't give deference to single member unpublished BIA decisions because they come out looking like this. But, you know, sort of what's your best argument for why together the IJ and BIA decisions don't make the statutory error that she alleges? Because the agency decisions consider the non-physical harm that the petitioner experienced and determine that this non-physical harm does not rise to extreme cruelty. Although the- Do you take that to mean that any non-physical harm would not rise to be extreme cruelty? No your honor. Why? Just as applied to in this case. As applied to what? I'm sorry? Just in this case. The non-physical harm that this particular petitioner experienced does not constitute extreme cruelty. Right. But what I'm saying is given what's in this order, why couldn't we think that the BIA thought that this non-physical violence didn't satisfy the standard because no non-physical violence satisfied the standard? They don't say anything that is- or she, he does not say anything that's different than- that eliminates that possibility, right? Especially in light of what the IJ had done. Well, the IJ's- the emphasis of the relevant portion of the immigration judge's decision certainly did focus on physical harm. But not exclusively. Did- Well, let's suppose that the premise of Judge Grant's and Judge Newsom's questions is correct, that the IJ clearly applied a standard that required physical violence. Then the BIA says, quote, we disagree that the immigration judge used the wrong standard in this case. I mean, how else can we read those decisions other than to require physical violence? Well, if the board had- had accepting the judge's premise, if the board had ended there, then there would be a problem. But the board didn't end there. Instead, I mean, a little earlier on the first page of the board's decision, the board laid out all of the harm that the petitioner experienced, which includes a lot of the non-physical harm that she experienced. But then the board went on to discuss the primary harm that the petitioner testified to, that her spouse abandoned her when she became ill. And then said, that's not enough. The board- respectfully, Your Honor, the board didn't say that. Instead, the board talked about how that type of harm is not the type of harm that this type of relief was meant to protect from. As the board's citation to matter of AM shows, special rule cancellation of removal under the Violence Against Women's Act was to stop non-citizen spouses from having to make the choice of staying in an abusive relationship or obtaining lawful status in this country. Right. That was not the choice that was presented to the petitioner because the main harm, the main abuse that she experienced was her spouse deciding that he no longer wanted to be in a relationship with her. So she was not confronted with that choice. I have to stay in this abusive relationship or be at risk of being removed. Instead, her spouse chose to leave her. That is the most significant harm that she experienced from him. I think, again, just speaking for myself, I think what you're hearing is some skepticism given the way the IJ's order is written, given the fact that the BIA expressly adopts it, given the fact that the BIA says the IJ didn't apply the wrong standard, that then this follow-on language in the BIA's decision is like a fix it. So I mean, maybe let's, at least for my own purposes, let's assume that the BIA's decision is properly read to impose a physical abuse only standard. Now we're on to the legal question. You've acknowledged that there is no Chevron deference, that we're only in Skidmore land. So basically, essentially, you've got to persuade us that the BIA's interpretation was right. And what do you do then at the interpretive level with, you know, we sort of scoured the dictionaries for what, you know, sort of what the term cruelty means. And cruelty is defined in every dictionary we could find to include mental suffering. And then the term even more so, the term extreme cruelty, which is a term of art in the domestic violence space, domestic relations space, is defined specifically to include the imposition of mental anguish. What now? Well, Your Honor, the imposition of mental anguish, we would need definitions for that term to then determine that the board was incorrect and not concluding that it was part, that it, that this is included in the extreme cruelty requirement. So we need like a definition of the definition is what you're saying? Like the term is extreme cruelty, right? Yes, Your Honor. So just take my word for it that Black's sixth edition, which was the edition that was published just before this statute, that extreme cruelty is grounds for divorce, for instance, may destroy peace of mind or to impair bodily or mental health. I would go back to Bedoya, Your Honor, and say that reasonable minds could disagree what those terms mean as a practical matter. Does that mean that it's entirely standardless or that there are some, some bounds? There are some bounds, Your Honor. For example, there are unpublished board decisions interpreting this phrase. Some finding that the applicant established battery or extreme cruelty and some finding that the applicant did not. What's the government's position on whether nonviolent acts can qualify in any situation as extreme cruelty? Yes, Your Honor. They can. Okay. Can I ask you a question just since you're here as a representative of the government and you probably litigate immigration cases fairly frequently, is that fair? I don't mean to make you an expert, but I have a question about what, how 1103A1 works. This was one of the questions that we put to the parties. I'll have to confess, like, I've never quite understood what 1103A1 is supposed to do, right? 1103A1 says, it's buried in a provided however clause, but it says provided however, and I'm paraphrasing, that the terminations of law by the attorney general shall be controlling, right? The Supreme Court tends to point to this statute when it is saying that determinations, that the BIA's legal determinations get Chevron deference. I don't think I quite understand that. The statute says controlling. So is it the government's position that this statute operates independently of ordinary deference doctrines and makes the attorney generals, or here the BIA's determinations of questions of law, controlling? No questions asked, they just control, they bind. No, your honor. So the provision you talked about does state that attorney general decisions merit deference, but it doesn't answer the question. Well, it doesn't say they merit deference. It says they merit homage, something, obedience. Yes, your honor. But this, the particular provision you're talking about, has two different meanings. First, it's talking about organizationally, as affairs, immigration affairs are shared between different departments in the executive branch. And so the statute is saying, but when there's a question of legal determination, it's the attorney general. Yeah, so this is interesting. You mean as between, like intra-executive branch, as between the attorney general and, say, the secretary of state. The attorney general's determinations of questions of law are controlling over and above the secretary of state. But it doesn't speak to courts at all. Not directly, no, your honor. It does support the attorney general's decisions being given deference, but it does not answer the question of what deference. And so authoritative constructions by the attorney general are eligible for Chevron deference. And that's consistent with this court's precedent. Does 11, yeah, I don't really disagree with that, I don't think, but does 1103A1 add to that? I mean, wouldn't, you know, the BIA is an executive agency like any other executive agency. Wouldn't it get Chevron deference with or without 1103A1? What does 1103A1 add? Well, it adds organizationally. Yeah, so I get it that internal to the executive branch, it actually does something very important. It basically says to the secretary of state or department of homeland security or whomever, you stand down. When the attorney general has made a legal determination, zip it and get in line. But it doesn't really say anything with respect to the courts, and I don't even really understand how it adds anything vis-a-vis the courts if the agency's going to get Chevron deference or Skidmore or whatever it's entitled to without respect to 1103A1. It provides statutory support for Chevron deference and other levels of deference to attorney general decisions. So in that way, it's sort of read alongside the principles of Chevron deference and Skidmore deference. Okay. Unless there are any further questions, I see that my time has expired. The court should dismiss the petition for review. Thank you. Thank you. Thank you. Thank you. No questions?